51 CCPA

**Application of Edwin H. LAND.**
**Patent Appeal No. 7007.**

United States Court of Customs
and Patent Appeals.
Nov. 14, 1963.

Donald L. Brown, Brown & Mikulka, Cambridge, Mass., Stanley H. Mervis, for appellant.

Clarence W. Moore, Washington, D. C., (Jack E. Armore, Washington, D. C., of counsel) for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Associate Judges.

ALMOND, Judge.

This is an appeal from the decision of the Board of Appeals affirming the refusal by the examiner to allow claims 39 and 40 in a patent application [1] for "Photographic Process and Composition." Both claims are drawn to a process.

1. Serial No. 537,349, filed September 29, 1955.

The invention relates to a process of developing photographic film in the presence of environmental light. In the prior art process improved upon by appellant, the specification states:

" * * * the processing composition is spread between a pair of sheets, one of which carries a photosensitive stratum, to provide what may be termed a sandwich. Thereafter, the sheets are maintained in superposed relation for a predetermined processing period during which a visible print is produced from a latent image in the photosensitive stratum. At the completion of this processing period, the sheets are stripped apart to uncover the print. Ordinarily, the sandwich, during processing, is kept in a dark chamber in order to prevent further exposure of the photosensitive stratum of environmental light before the processing period is completed."

The problem attendant to this process was that the opening in the dark chamber through which the sandwich emerged on completion of the processing permitted penetration of light "into the photosensitive stratum through the edges of the sandwich," resulting in highlight streaks or fogging in the print. If the sandwich was removed from the dark chamber before processing was complete, the photosensitive stratum would be exposed by environmental light.

The specification further states:

"The present invention contemplates incorporating, in a processing composition of the foregoing type, a light-absorbing medium, such as a dye or pigment, which renders the layer of processing composition substantially opaque in order to permit processing to be effected in environmental light. Where the sheets are transparent or translucent, the light-absorbing medium in the processing composition may be so constituted as to shield the photosensitive stratum in a camera dark chamber from further photoexposure by light leakage. Where the sandwich is to be processed in relatively strong light, ordinarily it is desired that the sheet having the photosensitive stratum and, where feasible, the other sheet, be opaque."

The claims on appeal are limited to an inorganic pigment, preferably colloidal graphite, as the light absorbing medium. As stated in appellant's brief, "It is this use of an inorganic pigment, exemplified by colloidal graphite, which is the feature relied upon as patentably distinguishing the appealed claims from the prior art." A representative claim is:

"39. A photographic process comprising the steps of advancing a photosensitive stratum from the exposure chamber of a camera into superposition upon another stratum with a thin layer of an opaque fluid therebetween to form a sandwich by means of a pair of pressure-applying members from between which said sandwich extends outwardly from said exposure chamber into a region subjected to actinic light shielding opposed faces of said sandwich from said actinic light by means of opaque barriers, shielding said inner faces of the strata by means of said layer from said actinic light penetrating said sandwich *through edges* of said layer, said photosensitive stratum containing silver halide, said opaque fluid containing a silver halide developer, a silver halide solvent and a dispersion of *colloidal graphite,* said colloidal graphite being in a proportion that is sufficient *to render said thin layer substantially opaque to actinic light* penetrating edges of said sandwich and that does not exceed 5% by total weight of said opaque fluid in order not to interfere with reactions involving the remainder of said processing agents, reacting said silver halide developer with said silver halide in order to reduce silver, reacting said silver halide solvent with unreduced silver halide in order to form a complex silver salt, transferring said complex silver salt through said layer of opaque fluid

from said silver halide stratum to said other stratum, reducing said complex silver salt on said other stratum to silver in order to form a silver print, and stripping said photosensitive stratum together with said layer of said opaque fluid from said visible print." [Emphasis supplied.]

The examiner relied on four references in rejecting the claims. These references are:

| | | |
|---|---|---|
| Spiro | 409,618 | Aug. 20, 1889 |
| Ludwig | 787,103 | Apr. 11, 1905 |
| Land | 2,607,685 | Aug. 19, 1952 |
| Rogers | 2,774,668 | Dec. 18, 1956 |

The primary reference relied on below was the patent to Land. This patent discloses an image transfer photographic process in which a photosensitive stratum backed by an opaque backing is superimposed on an image bearing layer to form a sandwich. A pod containing processing liquid is ruptured when passed through rollers to release liquid developing agents. Also disclosed in Land is a separate pod containing pigment or dye to render the transparent backing of the image carrying layer impervious to light.

The Rogers patent discloses a color image transfer process in which a sandwich is formed similar to that in Land. Dyes are used to form the color image.

Spiro discloses a process of developing photographic plates or sheets without a dark-room by adding dyes to the developing bath to exclude actinic light. The patent states:

" * * * The non-actinic bath will completely exclude the actinic rays from the immersed plate or sheet, and the developing-mixture being perfectly clear the development will proceed in full view of the operator, who may thus easily note the progress of the development."

A "dark-orange-colored solution" is suggested in Spiro, which may contain "aniline coloring-matter, as well as all other inorganic coloring-matters * * *."

The Ludwig patent discloses a "Process of Developing Photographic Plates or the Like in Open Daylight" by coloring the sensitive surface of photographic plates to render them "insensitive to actinic rays of light * * *." As coloring material, the patent suggests "that known as 'scarlet saffron 3B;' but of course any other coloring material capable of producing the desired result may be used."

The examiner rejected the claims "as being unpatentable over either Land * * * or Rogers, each alone, or taken in view of either of Spiro or Ludwig." The board reversed the examiner on the rejection based on Land or Rogers alone, because Land fails to show "the incorporation of the opacifying agent *in the developing fluid*" and Rogers does not show advancing the photosensitive elements into a region of actinic light. The board affirmed the rejection of the claims based on combined patent teachings, considering the Rogers patent in combination with the Ludwig and Spiro patents "as being cumulative in relation to the Land patent as similarly combined."

The board reasoned as follows:

"Since Spiro and Ludwig provide a clear teaching of the expedient of adding a coloring material to a developer solution to protect a photosensitive stratum from the effects of actinic light, we believe that it would be well within the skill of the art to utilize this teaching in so protecting the photosensitive layer of the Land sandwich when it is brought in contact, to any extent, with actinic light. A person of ordinary skill in the art would be able to select from the now numerous dyes and pigments, inert materials which are suitable for the particular sensitivity of the emulsion being used. * * *

"It would be apparent to the technician in the subject art that inorganic pigments may be substituted for the dyes of Spiro and Ludwig, especially since Spiro discloses and claims the use of "non-actinic inorganic coloring matter." It may well

be that Spiro attributes to the term "inorganic" a scope in some respects broader than that in which it is employed today, but the Spiro patent would leave the technician in no doubt as to the applicability of "inorganic coloring matter" of today in the described process.

"This protective process does not become patentable anew because it was not mentioned in the Land patent or because the photosensitive layer of Land is employed in a diffusion-transfer process. In the Spiro and Ludwig process and in appellant's process the coloring matter serves the same protective function and is not directly involved in the chemical reactions of the photosensitive stratum."

Appellant argues that the claims are limited specifically to inorganic pigments as the opacifying agents, while Spiro and Ludwig are not. These patents are concerned with soluble colorants and the claims on appeal are concerned with insoluble colorants. Moreover, appellant contends, Spiro and Ludwig employ organic coloring materials, whereas the claims are limited to inorganic coloring materials. It is argued that in spite of the statement in Spiro that inorganic materials could be used, it is clear that only organic materials under today's definitions were contemplated in Spiro. Spiro thought of aniline as inorganic, appellant suggests, and the patent was granted in 1889 "at a time when little was known about organic chemistry, and the terms 'organic' and 'inorganic' still were used to indicate that the former had arisen through some kind of 'vital or life force' and was incapable of laboratory reproduction."

It is appellant's contention that "to hold inorganic pigments, * * * to be equivalents of the art-used soluble dyes is an improper use of appellant's disclosure. In re Ruff and Dukeshire, 45 C.C. P.A. 1037, 256 F.2d 590, 118 USPQ 340."

The issue is whether a person of ordinary skill in this art would, from the teachings of Spiro and Ludwig, consider it obvious to use an opaque pigment in a developer solution and, more particularly, to use a dispersion of colloidal graphite which does not exceed 5% by total weight of the opaque fluid.

We fail to discern a patentable distinction predicated on the relative solubility of dyes and pigments. There has been no disclosure that solubility of the opacifier has any bearing on its protective function against actinic light. Indeed, appellant's specification states, with reference to the light absorbing medium, "The medium preferably is an organic dye * * * [or] Alternatively the medium is a pigment * * *." No mention is made of a preference for an insoluble medium.

The Land patent shows that dyes and pigments may be used interchangeably in rendering liquids opaque to actinic light. Since the prior art recognized the equivalence of dyes and pigments for the purpose here used, the decision of In re Ruff et al., supra, is not here pertinent.

While it may be true that Spiro contemplated organic coloring materials, as argued by appellant, the patent is specific in reciting that "all other inorganic coloring-matters" could be used. Even if Spiro was under a misapprehension as to the meaning of "inorganic" the suggestion to the art is clear and unequivocal. Since the ability to block actinic light has not been shown to depend on whether the material used is organic or inorganic, we agree with the board that it would be obvious to employ inorganic colorants to protect the photosensitive stratum.

The percentage of opacifier recited in the claims has not been shown to be critical, nor has it been shown to differ from that employed in the prior art patent to Spiro. We therefore find no patentable distinction supported by the percentage claimed.

As to the particular pigment recited in claim 39, we agree that it would be obvious to employ colloidal graphite for the same protective function for which other

opacifiers were used in the prior art. Land suggests in one embodiment employing a white pigment on one backing of the sandwich and a black dye for rendering the other backing opaque after exposure so that "the film unit [is] completely light-impervious, so that it may be removed from the camera immediately after passing through the pressure rollers." Given this teaching of a white pigment and a black dye to render a film unit light-impervious, it would be obvious to one skilled in the art to use a black pigment, i. e., graphite, for the same purpose. Combined with the clear suggestion in the secondary references to add the coloring material to the developing fluid, we find the improvement in the Land process obvious to one skilled in the art.

For the reasons stated, the rejection of claims 39 and 40 is affirmed.

Affirmed.